812 F.2d 1408
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Virginia POWELL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-2021.
 United States Court of Appeals, Sixth Circuit.
 Jan. 19, 1987.
 
 Before LIVELY, Chief Judge, WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant Virginia Powell appeals from the decision of the district court affirming the Secretary's denial of disability benefits.
 
 I.
 
 2
 Appellant Powell filed an application for disability insurance benefits on January 22, 1981, claiming a disability onset date of April 2, 1978. A hearing was held, and on January 29, 1982, the Administrative Law Judge (ALJ) denied her request for disability benefits. The decision of the Appeals Council was appealed to the district court. The district court remanded the case because the ALJ erred in relying solely on the grid. The district court opined that because non-exertional impairments were present it was improper to rely on the grid. Pursuant to the remand order, the Secretary obtained additional medical and psychological evidence.
 
 
 3
 On July 19, 1984, the ALJ found that Powell was not disabled. He determined that Powell was able to perform sedentary work with a sit-stand option, and since her last job was in this category, he reasoned that there was no need to determine if the appellant could perform other work. However, the ALJ determined that even were he to find that Powell could not perform her former job, she was able to perform other work. The ALJ relied on the grid as a guide as well as the testimony of a vocational expert, to reach this conclusion. The Appeals Council denied Powell's request for review on September 7, 1984. On October 28, 1985, the United States District Court affirmed the Secretary's decision. Claimant filed this timely appeal.
 
 
 4
 Powell was born on June 18, 1924, and was 59 years old at the time of the second hearing. She is a widow and she has a high school education.
 
 
 5
 Powell's most recent job was that of an assembler. As an assembler, Powell performed final assembly work of a light exertional level and subassembly work of a sedentary exertional level. The vocational expert, Dr. Fortiu, considered these jobs to be semi-skilled, and felt that these jobs provided skills transferable to other occupations. Such skills included the ability to apply varied techniques in the manufacture and assembly of electronic products, the ability to perform a variety of assembly tasks and to adjust to a change in assembly tasks, the ability to be perceptive to detail, the ability to use hand tools, and the ability to work in accordance with instructions.
 
 
 6
 Prior to working as an assembler, Powell worked as a machine operator. This job was characterized by Dr. Fortiu as unskilled work, ranging from light to medium in exertional level. Powell had performed other unskilled work as well.
 
 
 7
 Powell alleges that she became disabled on April 2, 1978. Powell injured her back when she slipped in the parking lot at work in March of 1978. She testified that she has both sharp and dull pain in her lower back, and that the pain worsens when she walks. Appellant also states that she experiences a burning sensation and pain in her legs just above the knees. Powell stated that as a result of her impairments her ability to stand and sit is limited to about 20 to 30 minutes for each activity. She has difficulty climbing stairs, but she is able to dress and feed herself and care for her personal needs. She is also able to perform light household chores, such as sewing, dusting, washing dishes, cooking and making the bed.
 
 
 8
 Powell underwent back surgery in 1971 and carpal tunnel surgery on her right upper extremity in 1977. Although she had returned to work after her surgeries in 1971 and 1977, she has not returned to work since her fall in March of 1978.
 
 
 9
 Since her fall, several physicians have examined Powell. Dr. Zachary Endress examined Powell on July 11, 1978. He found tenderness throughout the lumbar spine and noted that straight leg raising caused pain in her back and both hips. Dr. Endress noted that he believed Powell's complaints of pain were exaggerated.
 
 
 10
 Dr. Chess also examined Powell in July of 1978. Powell complained to Dr. Chess that she could not sit or stand for a long period and that she was unable to bend at the waist because of pain. There was some subjective weakness of the right lower extremity and a depressed right ankle jerk. Because of her complaints of increasing pain in September of 1978, she was referred to a pain clinic for treatment.
 
 
 11
 Powell was hospitalized in February of 1979 as a result of low back pain. Although Dr. Michael Fugle recommended a lumbar myelogram, Powell refused to undergo the procedure. Dr. Fugle's diagnoses were acute lumbar myositis and chronic lumbosacral sprain and strain. A follow-up examination showed no change in Powell's condition.
 
 
 12
 Powell was also under the care of Dr. Hamilton. His diagnosis was chronic lumbosacral myositis with nerve root irritation at S1 on the right. His report of September 12, 1979, indicated that in the past nine months Powell had made little or no progress and that he believed she was presently unable to work. Dr. LePere, an associate of Dr. Hamilton's, stated in November of 1980, that Powell was totally and possibly permanently disabled. Dr. LePere stated that Powell would be unable to perform a job that entailed prolonged sitting, standing, walking or bending.
 
 
 13
 In October of 1981, Dr. Seo examined Powell. This physician found no neurological disorder but treated her for sacroilitis. Dr. Seo noted that Powell was reluctant to be evaluated and treated and felt her prognosis was rather guarded due to her mental attitude.
 
 
 14
 Dr. LePere made an updated report on September 2, 1983. He determined that there had been no overall improvement. He felt that only if Powell was 10 years younger, had surgery and did not work for six months would she be able to do sedentary work in the future.
 
 
 15
 A lumbar myelogram was performed by Dr. Fugle during a hospitalization in September of 1983. His diagnoses were L4 disc degeneration, extradural nerve root adhesions, and acute lumbar myositis.
 
 
 16
 A consultative examination was performed by Dr. Theodoulou on March 6, 1984. He reported that Powell walked with a normal gait and her lower extremity strength was normal. In evaluating Powell's ability to perform work related activities, Dr. Theodoulou estimated that she was able to sit, that she could stand one-half hour at a time, and that she could lift and carry objects weighing up to 10 pounds. He opined that she could push, pull and handle light objects and could bend occasionally.
 
 
 17
 A psychiatric consultation in November of 1978, evidenced no significant physical pathology that could be corrected surgically and indicated that emotional factors were strongly suspected as causing her symptomatology. Powell was described as despondent, hostile, and suffering from repressed anger. She was placed on anti-depressant medications.
 
 
 18
 Christian R. Barrett, a licensed psychologist, evaluated Powell on March 3, 1984. He found that Powell was reasonably cooperative, readily complied with all tasks and directions, displayed a good sense of humor, and had the ability to relate well with other people. Dr. Barrett stated that, "[T]he personality profile does not reveal any elements of mental illness which would prohibit making occupational, personal or social adjustments, although her adaption to new situations is likely to be difficult for her."
 
 
 19
 A psychiatric examination was conducted by Dr. Fuller on April 7, 1984. He found no impairment of Powell's memory, attention, concentration or sensorium. Dr. Fuller opined that claimant had adopted the role of an invalid, attributing all of her difficulties in life to her back pain. Dr. Fuller diagnosed psychogenic pain disorder which allowed her to escape from working, and granted her benefits which would otherwise be unobtainable.
 
 II.
 
 20
 The only issue on appeal is whether there is substantial
 
 
 21
 evidence to support the Secretary's decision to deny the
 
 
 22
 claimant disability benefits. Substantial evidence is
 
 
 23
 defined as "such relevant evidence as a reasonable mind
 
 
 24
 might accept as adequate to support a conclusion." It is
 
 
 25
 more than a scintilla, but less than a preponderance.
 
 
 26
 Richardson v. Perales, 402 U.S. 389, 401 (1971). The scope
 
 
 27
 of judicial review is limited to determining whether the
 
 
 28
 findings of fact made by the Secretary are supported by
 
 
 29
 substantial evidence, and deciding whether the Secretary
 
 
 30
 employed the proper legal criteria in reaching those
 
 
 31
 findings. Gibson v. Secretary of Health, Education &
 
 
 32
 Welfare, 678 F.2d 653 (6th Cir.1982). Thus, the court may
 
 
 33
 not try the case de novo by resolving conflicts in the
 
 
 34
 evidence or deciding questions of credibility.
 
 
 35
 Powell argues that because of her back and leg pain, her
 
 
 36
 ability to sit, stand and walk is so limited she cannot
 
 
 37
 perform even sedentary work. She claims that the medical
 
 
 38
 and lay testimony clearly support this proposition.
 
 
 39
 Although Powell states that her pain is so severe she is
 
 
 40
 unable to work, her testimony does not necessarily
 
 
 41
 corroborate this since she performs such activities as
 
 
 42
 crocheting, sewing, dusting, making the bed, cooking,
 
 
 43
 washing dishes, shopping and driving.
 
 
 44
 Powell contends that the ALJ attempted to summarily dismiss
 
 
 45
 her back and leg pain on the basis of her ability to sit
 
 
 46
 through a 37 minute hearing and on the statements made by
 
 
 47
 Dr. Endress in his report. We conclude that appellant's
 
 
 48
 contention is without merit, since the ALJ relied on other
 
 
 49
 evidence in the record.
 
 
 50
 Powell further contends that the ALJ substituted his opinion
 
 
 51
 for that of the physicians. The ALJ found that Powell's
 
 
 52
 impairments consisted of lumbar myositis, status post-back
 
 
 53
 surgery and non-severe psychogenic pain disorder with
 
 
 54
 depression. The ALJ found that the physicians' reports do
 
 
 55
 not suggest total disability, and that Powell's allegations
 
 
 56
 of extreme pain and severe restrictions are inconsistent
 
 
 57
 with the objective medical records. It is our opinion that
 
 
 58
 the ALJ did not substitute his opinion for that of the
 
 
 59
 physicians. Although the reports of the physicians show
 
 
 60
 that Powell's physical activity is limited because of her
 
 
 61
 pain, these reports do not suggest total disability but
 
 
 62
 indicate a capacity for sedentary activity.
 
 
 63
 Appellant relies heavily on Dr. LePere's report in which he
 
 
 64
 stated that Powell was "disabled" and unable to work.
 
 
 65
 However, as the ALJ noted, there is no indication that Dr.
 
 
 66
 LePere's use of the word "disabled" was based on the meaning
 
 
 67
 of "disabled" as defined by Congress. It is the ALJ's
 
 
 68
 responsibility to review all the evidence, including
 
 
 69
 physicians' reports, and to make the ultimate determination
 
 
 70
 of disability. The ALJ must review both the vocational and
 
 
 71
 medical evidence, and cannot be bound by a physician's
 
 
 72
 opinion on the ultimate issue.
 
 
 73
 Powell also argues that the ALJ erred when he asked the
 
 
 74
 vocational expert a hypothetical question. The
 
 
 75
 challenged question reads:
 
 
 76
 Assume I find the claimant able to sustain an eight hour
 
 
 77
 work day, working at the sedentary level, with a sit-stand
 
 
 78
 option, during the course of this she would have the full
 
 
 79
 use of her upper extermities [sic] for repetitive movements,
 
 
 80
 and pushing and pulling of arm controls, gross manipulation, reaching.
 
 
 81
 That she would not be able to use her lower extremities for
 
 
 82
 repetitive pushing and pulling of leg controls and
 
 
 83
 that she would be able to bend occasionally.
 
 
 84
 Would these findings permit performance by the claimant in
 
 
 85
 any of her previous jobs?
 
 
 86
 The vocational expert answered the question in the
 
 
 87
 affirmative. Powell felt that the question was defective
 
 
 88
 because it did not take into account the medical or lay
 
 
 89
 testimony or the non-exertional impairments described by Dr.
 
 
 90
 Fuller. We reject this argument. This question has built
 
 
 91
 into it many qualifications so that the ALJ could determine
 
 
 92
 if there are jobs that Powell can perform even though she
 
 
 93
 does not have full use of each body part. If the ALJ's
 
 
 94
 conclusions as to Powell's physical limitations and her
 
 
 95
 residual capabilities are supported by substantial evidence,
 
 
 96
 clearly this was an appropriate question to ask the vocational expert.
 
 
 97
 In addition, Powell argues that the ALJ erred in determining
 
 
 98
 that she could perform her past work. She claims that the
 
 
 99
 vocational expert first testified that appellant could
 
 
 100
 perform her former job as a subassembler, but later changed
 
 
 101
 his mind and opined that she could not. She further
 
 
 102
 contends that the vocational expert testified that if her
 
 
 103
 former job required more than occasional bending, she would
 
 
 104
 be unable to perform that job. The vocational expert did
 
 
 105
 make a statement to the effect that if claimant's prior job
 
 
 106
 required frequent bending, she would not be able to perform
 
 
 107
 it, but the appellant's testimony does not support the
 
 
 108
 conclusion that she had to bend more than occasionally.
 
 
 109
 Although it is true that the vocational expert's testimony
 
 
 110
 could have been more clear, he did testify that appellant
 
 
 111
 could perform her prior work. The vocational expert
 
 
 112
 answered the ALJ's hypothetical question in the affirmative,
 
 
 113
 stating that appellant could do sedentary work with a
 
 
 114
 sit-stand option, and that there were available jobs that
 
 
 115
 she could perform. The expert said there were approximately
 
 
 116
 3,000 of these subassembly jobs in the Detroit area and
 
 
 117
 6,000 in the State of Michigan.
 
 
 118
 As previously mentioned, appellant claims that her back pain
 
 
 119
 is so severe she cannot work. The two-pronged test for
 
 
 120
 reviewing claims of disabling pain is set forth in Duncan v.
 
 
 121
 Secretary of HHS, 801 F.2d 847, 853 (6th Cir.1986):
 
 
 122
 First, we examine whether there is objective medical
 
 
 123
 evidence of an underlying medical condition. If there is,
 
 
 124
 we then examine: (1) whether objective medical evidence
 
 
 125
 confirms the severity of the alleged pain arising from the
 
 
 126
 condition; or (2) whether the objectively established
 
 
 127
 medical condition is of such a severity that it can
 
 
 128
 reasonably be expected to produce the alleged disabling pain.
 
 
 129
 See also S.Rep. No. 466, 98th Cong., 2d Sess. 24, reprinted
 
 
 130
 in 130 Cong.Rec. Sec. 6221 (daily ed. May 22,
 
 1984); Landry v. Heckler, 782 F.2d
 1551, 1553-54 (11th Cir.1986)
 
 131
 (per curiam).
 
 
 132
 The ALJ found appellant had lumbar myositis, status
 
 
 133
 post-back surgery and non- severe psychogenic pain disorder
 
 
 134
 with depression. This satisfies the first part of the test.
 
 
 135
 However, the ALJ found that appellant's allegations of
 
 
 136
 extreme pain and severe restriction in functional capacity
 
 
 137
 were inconsistent with the objective record and were not
 
 
 138
 credible. These findings are supported by substantial
 
 
 139
 evidence, and therefore, the first alternative of the second
 
 
 140
 part of the test is not satisfied. The second alternative
 
 
 141
 of the second prong of the Duncan test is also not satisfied
 
 
 142
 because there is substantial evidence in the record to
 
 
 143
 support the ALJ's conclusion that appellant's medical
 
 
 144
 conditions are not so severe that they reasonably could be
 
 
 145
 expected to produce disabling pain.
 
 
 146
 It is our opinion that there is substantial evidence to
 
 
 147
 support the Secretary's decision that the
 
 
 148
 appellant is capable of performing her
 
 
 149
 past work. Accordingly, the
 
 
 150
 judgment is AFFIRMED.